**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 28, 2012

LETTER TO COUNSEL:

> Re:   *William Ernest Gross v. Michael J. Astrue*, *Commissioner of Social Security*,
> Civil No. SAG-10-2416

Dear Counsel:

On September 1, 2010, the claimant, William Ernest Gross, petitioned the court to review the Social Security Administration's final decision to deny his claim for Supplemental Security Income ("SSI").   ECF No. 1.   I have considered the parties' cross-motions for summary judgment.   ECF Nos. 19, 22.   Mr. Gross also filed a reply brief.   ECF No. 25.   I find that no hearing is necessary.   Local Rule 105.6 (D. Md. 2011).   The court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards.   42 U.S.C. §§ 405(g), 1383(c)(3);   *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).   Under that standard, I will grant the Commissioner's motion and deny Mr. Gross's motion.   This letter explains my rationale.

William Gross applied for SSI on October 30, 2006, alleging that he was disabled due to injuries resulting from being struck by a motor vehicle including a fracture of his tibia and fibula, degenerative lumbar and cervical disc disease, and radiculopathy. (Tr. 14, 126, 157).   His claim was denied initially, and upon reconsideration. (Tr. 70-80).   Administrative Law Judge Judith A. Showalter ("the ALJ") held a hearing on August 26, 2008.   Following the hearing, in a decision dated December 11, 2008, the ALJ found that Mr. Gross retained the residual functional capacity ("RFC") to perform

> simple, unskilled sedentary work as defined in 20 C.F.R. 416.967(a) except that he could lift 10 pounds frequently and occasionally, stand or walk for 2 hours in an 8 hour day, sit for 6 hours in an 8 hour day, with only occasionally reading and writing, occasionally climbing a ramp or stairs, crouching, crawling, stooping, kneeling, and balancing but never climbing a ladder, rope or scaffold, with only frequent pushing and pulling with the upper and lower extremeties, frequent handling and fingering with the non-dominant left hand, and avoiding heights and hazardous machinery, and vibrations and the ability to use a cane to ambulate.

(Tr. 20).   The ALJ found that he was not able to perform his past relevant work ("PRW"). However, after considering the testimony of a vocational expert ("VE"), the ALJ found that there

*William Ernest Gross v. Michael J. Astrue*, *Commissioner of Social Security*
Civil No. SAG-10-2416
December 28, 2012
Page 2

were jobs in the national and local economies existing in significant numbers that Mr. Gross could perform.  Accordingly, the ALJ found he was not disabled. (Tr. 12-27).  On July 9, 2010, the Appeals Council denied Mr. Gross's request for review, making the ALJ's opinion the final, reviewable decision of the Commissioner. (Tr. 1-4).

Mr. Gross presents several arguments on appeal.  Mr. Gross first argues that the ALJ erred in failing to find that he was "illiterate," and therefore failed to present proper hypotheticals to the VE.  Mr. Gross also contends that the ALJ erred in failing to find his left hand numbness and ankle fracture to be severe impairments at step two of the sequential evaluation. Finally, he argues that the ALJ erred in failing to give controlling weight to the opinions of his treating physicians. For the reasons that follow, I disagree.

With respect to the hypothetical questions to the VE, the Social Security Regulations provide that one of the vocational factors used to determine whether a claimant can perform substantial gainful employment is the educational level.  The Commissioner uses the following categories to describe a claimant's educational level: (1) illiteracy; (2) marginal education; (3) limited education; (4) high school education and above. 20 C.F.R. §416.964.

Contrary to Mr. Gross's argument, there was adequate information in the record about his abilities, and the ALJ made an appropriate finding regarding his educational level.  The ALJ found that Mr. Gross had a "limited education."  (Tr. 25).  Based on the record before this Court, the ALJ's finding was consistent with Mr. Gross's testimony that he attended school through 7th grade, could read very little, could write his name, and could handle money.  (Tr. 35-36).  The ALJ's finding was also consistent with the Regulations, because a "limited education" is defined as:

> Ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in a semi-skilled or skilled job. We generally consider that a 7th grade through 11th grade formal education is a limited education.

 20 C.F.R. §416.964(b)(3).

The Regulations note that an illiterate person generally has little or no formal schooling. 20 C.F.R. 416.964(b)(1).[1]  However, formal schooling is not the only indicator of work-related abilities. Past work experience, and the kind of responsibility that a claimant has had while working, may also show intellectual ability.  *See Range v. Social Security Administration,* 95 Fed. Appx. 755, 757(6th Cir. 2004).  In presenting hypotheticals to the VE in Mr. Gross's case,

---

[1]"Illiteracy means the inability to read or write.  We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally an illiterate person has had little or no formal schooling."   20 C.F.R. §416.964(b)(1).

*William Ernest Gross v. Michael J. Astrue, Commissioner of Social Security*
Civil No. SAG-10-2416
December 28, 2012
Page 3

the ALJ included a person with a 7th grade education and limited ability for reading and writing, but with past simple, unskilled work experience. (Tr. 63). The VE discussed the requirements of Mr. Gross's past relevant work as a foreman, and described it as light and unskilled. (Tr. 62). In sum, based on Mr. Gross's level of formal schooling, his work experience, and his testimony about his ability to read,[2] the evidence in this case supports the ALJ's conclusion that he falls outside the regulatory definition of illiterate.

Mr. Gross also argues that the ALJ erred at step two. Specifically, he contends that the ALJ should have found his ankle fracture and left hand numbness to be severe impairments. In order to be "severe," an impairment must significantly limit one's ability to do basic work activities. 20 C.F.R. § 416.921(a). An impairment is not severe "if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). A claimant bears the burden of production and proof during the first four steps of the inquiry. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Mr. Gross testified that his right ankle was shattered and that he is unable to move his ankle to a certain degree. (Tr. 47). However, the ALJ found that the medical record as a whole did not support a finding that his alleged ankle fracture was a severe impairment. (Tr. 22-24 ). Nevertheless, as required, the ALJ considered this non-severe impairment, as well as the allegations of left hand numbness, when determining whether Mr. Gross could perform work as required. (Tr. 51). For example, the ALJ considered Mr. Gross's allegations and clearly stated in her decision that, "Limitations in pushing and pulling and manipulative limitations were addressed to consider the claimant's right leg impairment and his complaints of left arm numbness." (Tr. 22). More importantly, the hypothetical presented to the VE included the limitation of frequent, rather than constant, pushing and pulling with the lower extremities, and also allowed the use of a cane. (Tr. 22, 50, 63-65). Finally, the ALJ also asked the VE to consider a hypothetical person who could only frequently, rather than constantly, handle and finger with the non-dominant left hand. (Tr. 22, 64). The ALJ's hypotheticals were consistent with Mr. Gross's allegations and are supported by the medical records. (Tr. 140, 293, 337, 338, 355). As a result, even if I were to agree that the ALJ erred in her treatment of Mr. Gross's impairments at step two, such error would be harmless. Because the ALJ found other severe impairments, she continued with the sequential evaluation process and considered all of Mr. Gross's impairments, both severe and non-severe, that significantly impacted Mr. Gross's ability to work. *See* 20 C.F.R. § 404.1523.

Mr. Gross's final argument is that the ALJ improperly rejected the opinions of his

---

[2] Mr. Gross testified that he can read some things. For example, when the ALJ asked Mr. Gross if he could read a menu in a restaurant and make a choice for a meal, he replied, "certain foods, I guess, hamburger and stuff like that." (Tr. 35).

*William Ernest Gross v. Michael J. Astrue, Commissioner of Social Security*
Civil No. SAG-10-2416
December 28, 2012
Page 4

treating physicians.   However, I find that the ALJ properly considered the opinions of the treating physicians: Dr. Sternberg, Dr. Greco, Dr. Barrish, Dr. Harriott, Dr. Bontempo, and Dr. Somori.  A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record.  *See Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996); *see also* 20 C.F.R. § 404.1527(d)(2).   Federal regulations require an ALJ to assess a number of factors when considering what weight to assign to the medical opinions presented. 20 C.F.R. § 416.927(d).  These factors include the examining relationship between the physician and the claimant; the treatment relationship between the physician and the claimant; the extent to which a medical opinion is supported by evidence; the consistency of a medical opinion with the record as a whole; and the specialization of the physician. 20 C.F.R. § 404.1527(d)(1)-(5).   Treating source opinions are never entitled to controlling weight on issues reserved to the Commissioner.  20 C.F.R. § 404.1527(e).  Issues reserved to the Commissioner are administrative findings – such as determining a claimant's RFC – that are dispositive of a case. *Id.*

In her written opinion in this case, the ALJ expressly considered Dr. Richard Sternberg's medical opinion. She found that the opinion was entitled to "some weight" to the extent it supported a finding that Mr. Gross could stand and walk for 2 hours in an 8 hour day, sit for 6 hours, and frequently handle and finger.  Dr. Sternberg prescribed a cane for Mr. Gross to use to ambulate and the ALJ included the use of a cane in the RFC determination.  (Tr. 48, 64-65, 325). However, the remaining limitations were given little weight because the ALJ found they were unsupported by the balance of the evidence. (Tr. 24).   After review of the entire record, I agree. For example, in March 2007, Dr. Sternberg's assessment stated that Mr. Gross could only lift less than 10 pounds, and that he may not lift or carry because he needs a crutch.  (Tr. 48, 336-338).  This assessment, dated and signed March 14, 2007, was apparently rendered prior to April 2007, when Dr. Sternberg successfully removed locking screws from Mr. Gross's right tibia in order to promote compression healing.  (Tr.  324, 336-339).

The ALJ found that Dr. John J. Greco's opinions did not accurately reflect Mr.  Gross's alleged limitations, since Dr. Greco's opinions were rendered one year after he stopped treating Mr. Gross. (Tr. 282).  The ALJ appropriately questioned the doctor's opinions regarding the extent of Mr. Gross's limitations on his ability to function in the absence of contemporaneous treating records to support his findings.  (Tr. 283-290).

The ALJ also noted that Dr. William Barrish's opinions regarding Mr. Gross's residual functional capacity were questionable.  Dr. Barrish examined Mr. Gross in January 2008, at which time he stated that in order for him to determine Mr. Gross's long term functional capabilities, and complete the Assessment form, he needed to review a functional capacity evaluation ("FCE").  (Tr. 370).  An FCE was completed by Mr. Craig Joachimowski in July 2008, however, as noted by the ALJ, Mr. Joachimowski stated that it was his opinion that the FCE report was "equivocal" because Mr. Gross demonstrated symptom exaggeration, equivocal inappropriate illness behavior, and put forth sub-maximal effort.  (Tr.  24, 378-381).    As the

*William Ernest Gross v. Michael J. Astrue, Commissioner of Social Security*
Civil No. SAG-10-2416
December 28, 2012
Page 5

ALJ noted, the equivocal nature of the FCE undermines the validity of Dr. Barrish's report and was properly considered as such by the ALJ.   Finally, the ALJ explained that she was assigning little weight to the opinions of Dr. Bontempo, Dr. Somori, and Dr. Harriott since they relied on Mr. Gross's subjective complaints, and were inconsistent with the record as a whole.  (Tr. 24).

It is clear from the ALJ's opinion that she engaged in the required analysis and considered each of the factors listed in 20 C.F.R. § 416.927(d).  The ALJ's opinion is supported by substantial evidence, namely the mild limitations in Mr. Gross's activities of daily living and social functioning, and the opinions of a series of state medical consultants that Mr. Gross is able to work with certain limitations.   The ALJ's decision to adopt the opinions of those state consultants is in accordance with SSR 96-6p, which provides that an ALJ may afford great weight to non-examining state agency physicians' opinions.   When conflicting evidence is presented, the ALJ retains the discretion to resolve such inconsistencies.  *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990).  It is clear that the ALJ did so here.  For example, the ALJ did not simply adopt the opinion of the state agency consultant, Dr. J. Acuna; rather, she placed additional limitations on Mr. Gross's abilities to lift and to carry and finger in accordance with the evidence presented. (Tr. 24, 357).  Because substantial evidence supports the ALJ's analysis, remand is unwarranted.

For the reasons set forth herein, Mr. Gross's motion for summary judgment, ECF No. 19, will be DENIED and the Commissioner's motion for summary judgment, ECF No. 22, will be GRANTED.  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion.   An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge